**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MADISON MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:14-cv-00565-JPG-PMF |
| DIAMOND STATE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## **MEORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Madison Mutual Insurance Company's Motion for Summary Judgment (Doc. 22); Defendant Diamond State Insurance Company's Motion for Summary Judgment (Doc. 25); Defendant Diamond State Insurance Company's Request for Oral Hearing on Diamond State's Motion for Summary Judgment (Doc. 27); and Defendant Diamond State Insurance Company's Motion to Strike Plaintiff Madison Mutual Insurance Company's Statement of Uncontroverted Material Facts (Doc. 28).  The parties have filed timely responses to each of the motions (Docs. 29, 30, and 31).

With regard to Defendant Diamond State Insurance Company's Request for Oral Hearing on Diamond State's Motion for Summary Judgment (Doc. 27), the Defendant argues that oral arguments would "materially assist the Court in reaching its decisions" and that the issues in this matter are complex and important given that, "over $400,000 in defense costs (plus potential indemnity exposure) are at issue."

After examining the briefs, the Court concludes that oral arguments are unnecessary as the issues are fully addressed and responded to by the parties.  As such, the Court denies the Defendant Diamond State Insurance Company's Request for Oral Hearing on Diamond State's Motion for Summary Judgment (Doc. 27).

The Court will next address Defendant Diamond State Insurance Company's Motion (Doc. 28) to Strike Plaintiff Madison Mutual Insurance Company's Statement (Doc. 24) of Uncontroverted Material Facts. Defendant cites to Local Rule 7.1(d) which provides:

> All briefs shall contain a short, concise statement of the party's position, together with citations to relevant legal authority and to the record. Allegations of fact not supported by citation may, in the Court's discretion, not be considered. No brief shall be submitted which is longer than 20 double-spaced typewritten pages in 12 point font.

Plaintiff Madison Mutual filed an eighteen (18) page memorandum of law in support of its motion for summary judgment (Doc. 22) along with filing a fourteen (14) page statement of uncontroverted material facts (Doc. 24). As such, Defendant argues that the Plaintiff is attempting to by-pass the 20 page brief limitation by filing two separate documents and that the statement of uncontroverted material facts should be stricken.

Federal Rule of Civil Procedure 56(c) provides in part that a party must support a factual position by: "(A) citing to particular parts of materials in the records, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" For the purpose of summary judgment, evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Haywood v. Lucent Technologies, Inc*., 323 F.3d 524 (7th Cir. 2003).

However, Plaintiff's Statement of Uncontroverted Material Facts is none of the above and most confusing to the Court, the Plaintiff's Motion for Summary Judgment does not cite to the Statement of Uncontroverted Material Facts. As such, the Court is unclear on the purpose of Statement and will have to agree with the Defendant that it appears to be an attempt to by-pass

the 20 page brief limitation. Defendant Diamond State Insurance Company's Motion (Doc. 28) to Strike is granted and Plaintiff Madison Mutual Insurance Company's Statement (Doc. 24) of Uncontroverted Material Facts is stricken.

I.  **Background**.

Plaintiff filed a Complaint for Declaratory Judgment (Doc. 2) on May 16th, 2014. The Complaint alleges that Geraldine Davidson and Gary Davidson were insured under a Homeowner Policy (Policy No. 103963067) issued by Madison Mutual ("Madison policy") which provided coverage for personal liability up to $500,000.00. The Davidsons were also insured with an Umbrella Policy (Policy No. 30006993) issued by Madison Mutual ("Umbrella policy") which provided an additional $1,000,000.00 for each occurrence.

Also during the relevant time, Diamond State issued a Real Estate Errors and Omission Insurance Policy (Policy No. REO1001740)("Diamond policy") to Geraldine Davidson with liability limits up to $1,000,000.00.

Geraldine Davidson, along with Gary Davidson, Todd Favre, Sherry Favre, Norman Arras, and Debra Arras, were sued by William and Wendy Dribben for fraudulent concealment and consumer fraud (Case No. 06-L-512, Twentieth Judicial Circuit, St. Clair County, Illinois, filed 8/17, 2006)("Original Litigation"). Diamond State defended Geraldine Davidson in the Original Litigation under a Reservation of Rights.

On May 31, 2011, William and Wendy Dribben again filed suit naming Lurbo Land Trust, Geraldine A. Davidson and Gary L. Davidson as defendants (Case No. 11-CH-581, Twentieth Judicial Circuit, St. Clair County, Illinois)("Underlying Litigation). In that Complaint,[1] the Dribbens allege tortious interference with prospective business advantage,

---

[1] Second amended complaint filed May 21, 2014.

malicious prosecution, trespassing, unjust enrichment, slander of title, and intentional infliction of emotional distress.  The Complaint contained prayers for injunctive relief and monetary damages.

Geraldine Davidson tendered the defense of the Underlying Litigation to Madison Mutual and Diamond State.  Madison Mutual defended under a Reservation of Rights and Diamond State rejected the tender.  The case at bar is a declaratory action brought by Madison Mutual requesting an equitable decree that Geraldine Davidson is insured under the Diamond policy and that Diamond State is responsible for any and all past and future expenses relating to Geraldine Davidson's legal defense in the Underlying Litigation and for reimbursement to Madison Mutual for all costs of its defense.

A review of the background of the Original and Underlying Litigation is relevant.  These cases arise from the property known as Heartland Oaks in Smithton, Illinois.  Three couples purchased approximately 150 acres from a farmer and developed the property into Heartland Oaks.  The couples were Geraldine and Gary Davidson; Todd and Sherry Favre; and Norman and Debra Arras.  The property was divided into four sections with three 40+ acres to each couple for a residence and one 25+ acre that would be developed and sold.  Geraldine Davidson is a real estate broker and was the primary concept and developer of Heartland Oaks.

The three couples also built a 30 acre lake on the residential property, but failed to obtain the necessary Illinois Department of Natural Resources (IDNR) permit for the lake's dam.  According to the complaints, the couples were aware of the permit requirement, but elected not to obtain it as a cost saving measure.  Although each couple's property contains a portion of the lake, the dam is located entirely on the Favre's property.

The couples each built a residence on their properties and Norman Arras, as a general contractor, built the 30 acre lake. The couples did not hire a professional engineer with regard to the lake and as stated above, they failed to obtain the required permit for construction of the lake's dam from the IDNR.

Todd and Sherry Favre decided to sell their home and property and listed it with Geraldine Davidson. As a licensed real estate broker, Geraldine Davidson represented the Favres as their agent in connection with the sale of their home and the property was sold to William and Wendy Dribben. As the property broker, and one of the developers of Heartland Oaks, Geraldine represented to the Dribbens the location of the property boundaries, all easements and restrictions, and that the property (including the lake) was in compliance with all federal and state laws.

The Dribbens purchased the Favres' property in November of 1999 and were notified by IDNR about the dam permit in 2006. They then filed suit – the Original Litigation – and as stated above, Diamond State defended Geraldine Davidson under a reservation of rights.

Things then went from bad to worse for the Dribbens. The Underlying Litigation contains allegations that Geraldine Davidson[2] attempted to steal portions of the Dribbens' property; made false accusations that William Dribbens was a murderer; violated the properties restrictive covenants by planting crops (including planting crops on the Dribbens' property); polluted the lake with crop runoff; installed dangerous fountains in the lake; trespassed; engaged in stalking like behavior; altered property title documents; and generally harassed the Dribbens.

---

[2] The Diamond State policy in question was issued solely to Geraldine Davidson so the Court will limit its discussion to those allegations levied against Ms. Davidson.

Also during this period, Geraldine Davidson brought the following suits against the Dribbens:

>5-CH-1247 *Davidsons v. Dribbens*:  Suit to enjoin Dribbens from repairing road - Davidsons voluntarily dismissed claim in 2011.

>*(Case number unknown) Davidson v. Dribben* – slander complaint by Geraldine Davidson against Wendy Dribbens – Davidson voluntarily dismissed in 2011.

>8-CH-1207 – *Davidson v. Dribbens,* second easement matter (first easement case noted earlier consolidated in Underlying Litigation) – dismissed for failure to state a claim.

This list is not inclusive of all the allegations contained in the 90 page pleading, but should suffice to indicate the type of allegations that the Dribbens brought against Geraldine Davidson in the Underlying Litigation.  It is difficult to review the background of the Original and Underlying Litigations without the term *caveat emptor*[3] coming to mind.

**2. Analysis.**

Summary judgment must be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

"It is, of course, well established that, as a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and federal procedural law."  *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,*

---

[3] Latin phase meaning "Let the buyer beware."

*Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  As such, this insurance dispute is governed by Illinois law and neither party argues to the contrary.

"Illinois courts determine an insurer's duty to defend by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy.  'An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage.'  In other words, if *any* portion of the suit potentially falls within the scope of the coverage, the insurer is obligated to defend."  *Health Care Ind. Liability Ins. Program v. Momence Meadows Nursing Ctr, Inc*., 566 F.3d 698, 694 (7th Cir. 2009)(quoting *Lyerla v. AMCO Ins. C*o., 536 F.3d 684, 688 (7th Cir. 2008))(internal citations omitted.)

"General liability insurance indemnifies against liability for damages arising from a broad array of acts and omissions and promises to defend any suit seeking damages arising from a covered loss or occurrence.  A promise to defend a "suit" is construed as a promise to defend the *entire* suit even if only one or some of the claims are covered by the policy.  This is known as the "complete defense" rule, and it is recognized in Illinois, as elsewhere."  *Philadelphia Indemnity Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 394 (7th Cir. 2014)(emphasis in original text).

The Original Litigation alleged fraudulent concealment, consumer fraud, and deceptive trade violations in the failure to obtain and the failure to disclose the IDNR permit for lake's dam.  There is no dispute between the parties that the Original Litigation involved allegations that arose from Geraldine Davidson's failure to inform the Dribbens about the lack of a dam permit while performing professional services as a licensed real estate broker.  There is also no dispute that Ms. Davidson properly tendered the matter to Diamond State and that Diamond State is participating in the on-going defense of the Original Litigation.

In the Underlying Litigation, the First Amended Complaint[4] named Lurbo Land Trust, Geraldine A. Davidson and Gary L. Davidson as defendants. The 44 page pleading contained 348 paragraphs in support of nine counts against all defendants. The Second Amended Complaint[5] names Geraldine A. and Gary L. Davidson, Keith and Jill Maschoff, Magna Trust FBO Arthur Engelage and Arthur Engelage, an individual, as defendants. The 90 page Second Amended Complaint contains 632 paragraphs in support of 18 counts. Counts I through XI and XIII through XVIII involve Geraldine Davidson. As stated above, Diamond State rejected the tender of this matter and Madison Mutual has been providing the defense.

Madison Mutual's Motion for Summary Judgment (Doc. 22) argues that Diamond State has duty to defend the Underlying Litigation[6] as there are allegations in the Underlying Litigation that were also alleged in the Original Litigation. As such, Madison Mutual states that the Underlying Litigation involves negligence against Ms. Davidson in her capacity as a real estate agent and some of the allegations "arose out of the same 'wrongful acts' alleged in Case No. 06-L-512." (Doc. 22, pg 8).

Diamond State's Motion for Summary Judgment (Doc. 29) counters that the Original Litigation pertains only to the failure to inform with regard to the lake's dam and that the alleged wrongful acts cited in the Underlying Litigation do not arise out of that act. Diamond State further argues that "re-alleging" factual information from the Original Litigation does not create

---

[4] Neither party has referred to the initial complaint or provided the initial complaint as an exhibit. As such, the Court will take into consideration only the First and Second Amended Complaints at issue in the motions.

[5] Second Amended Complaint consolidated with Case No. 7-MR-235, *Dribbens v. Davidsons*, Twentieth Judicial Circuit, St. Clair County, IL (declaratory and injunctive matter to declare the rights and obligation of the parties with respect to the easement on the road.)

[6] Madison Mutual's Motion Summary Judgment and Memorandum in Support cite to 11-CH-581, First Amended Complaint filed June 8th, 2011..

coverage or cause the matter to arise out of the same wrongful act contained in the Original Litigation.

The Diamond Policy contains the following provisions:

> Section 1.A.  COVERAGE PROVISIONS
>
> We will pay on your behalf, **damages** that you become legally obligated to pay because of **claims** made against you for **wrongful acts** arising out of the performance of **professional services** for others.
>
> Section IV.  DEFINITIONS
>
> A.   **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  **Bodily injury** does not include emotional distress arising out of **personal injury**.
>
> B.   **Claim** means a demand for money or services including, but not limited to, the service of a lawsuit or the institution of arbitration proceedings or other alternative dispute resolution proceedings, alleging a **wrongful act** arising out the performance of **professional services**.
>
> K.  **Professional services** means services performed for others in your capacity as a real  estate agent, real estate broker, real estate property manager or leasing agent, real estate consultant or counselor, real estate appraiser, real estate auctioneer, notary public, or member of a formal real estate accreditation, standard review or similar real estate board or committee.
>
> P.  **Wrongful Act** means any actual or alleged negligent act, error or omission or personal injury.

The Diamond policy was issued on October 13, 2005 and expired on November 22, 2007. It also contained reporting provisions as follows:

> **B. CLAIMS MADE PROVISION**
>
> This insurance applies to a **wrongful act** only if all of the following conditions are satisfied:
>
> . . .
>
> 3. the **claim** arising out of the **wrongful act** is first made against any Insured during the policy period; and
> 4. the **claim** is reported in writing to us no later than 60 days after the end of the **policy period**…
>
> _____
>
> B. **Reporting Possible Claims**
>
> . . .
>
> Any claim that may subsequently be made against you arising out of that **wrongful act** will be deemed for the purposes of this insurance to have been made on the date we received such notice.

The re-alleged factual allegations[7] contained in the Underlying Litigation are as follows:

1. That Geraldine Davidson is a licensed Illinois real estate broker who represented the Favres in connection with the sale of their home to the Dribbens.
2. That the Davidsons and Dribbens are neighbors.
3. That the plat showing the four properties that comprise Heartland Oaks was attached and incorporated by reference in each case.
4. The dam for the lake resides completely on the property now owned by the Dribbens.
5. That the six original owners failed to obtain a permit for the dam from IDNR.
6. That the six original owners knew that the lake's dam had not been engineered by a professional engineer licensed in the State of Illinois.

---

[7] The Court is providing a summary of the re-alleged allegations and is not repeating word-for-word the allegations as contained in the Original and Underlying litigations.

7. That in 2006, the IDNR advised the Dribbens that they were responsibility for permitting of the dam.

Although there are factual statements relating to the dam and the IDNR in the Underlying Litigation, those statements pertain to the allegations of Davidsons' harassment of the Dribbens and not the failure to disclose the requirement for a dam permit which was the issue in the Original Litigation.

The question becomes whether any of the allegations contained in the Underlying Litigation could be deemed as "rising out of the wrongful act" contained in the Original Litigation. There was a single wrongful act alleged in the Original Litigation – that of Geraldine's failure to disclose that the lake did not have an IDNR permit for the dam.

The fact that Geraldine Davidson was the real estate agent that represented the Favres in the sale of their home to the Dribbens and that she one of the developers of Heartland Oaks – are facts – but the allegations in the Underlying Litigation must arise from the previous ***wrongful act***. It could be argued that all the allegations – both in the Original and Underlying Litigations – arise from Ms. Davidson's actions as a real estate agent in the sale of the property from the Favres to the Dribbens (for if she has not sold them the home, none of these allegations could have occurred), but the sale of the home was not the "wrongful act" alleged in the Original litigation. The "wrongful act" was the failure to disclose the lack of the dam permit.

The failure of Geraldine Davidson to disclose the lack of the dam permit does not extend to the inclusion that all problems, omissions, harassment, trespassing, and numerous other allegations contained in the Underlying Litigation. Those allegations stand apart from the initial "wrongful act" and as such, Diamond has no duty to defend.

Also before the Court is Defendant Diamond State Insurance's Company recently filed Motion for Leave to File Counterclaim (Doc. 38).  Plaintiff filed an Opposition (Doc. 39) to the Counterclaim noting that the Scheduling and Discovery Order in this matter set a deadline for amending pleadings as December 18, 2014 (Doc. 18).   Plaintiff further states that discovery has been completed and depositive motions have been filed.  As such, Plaintiff would be prejudiced by the filing of a counterclaim at this stage of the litigation.

The Court agrees.  Defendant has been aware of the issue involved in the counterclaim for five months and has waited to request leave to file the counterclaim until now.  Further, this Court is addressing the rights and obligations of the parties pertaining to the Underlying Litigation and the Counterclaim related to the Original Litigation (which the Court understands is still on-going).  Therefore, it would be more appropriate filed in the Original Litigation or as a separate suit.

3.  **Conclusion**

Defendant Diamond State Insurance Company's Request for Oral Hearing on Diamond State's Motion for Summary Judgment (Doc. 27) is **DENIED**.  Defendant Diamond State Insurance Company's Motion (Doc. 28) to Strike is **GRANTED** and Plaintiff Madison Mutual Insurance Company's Statement (Doc. 24) of Uncontroverted Material Facts is **STRICKEN.**

The Court finds that Diamond State Insurance Company has no duty to defend Geraldine Davidson in the Underlying Litigation and as such, Plaintiff Madison Mutual Insurance Company's Motion for Summary Judgment (Doc. 22) is **DENIED** and Defendant Diamond State Insurance Company's Motion for Summary Judgment (Doc. 25) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Finally, Defendant Diamond State Insurance's Company Motion for Leave to File Counterclaim (Doc. 38) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** 9/15/2015

            *s/J. Phil Gilbert*
            **J. PHIL GILBERT**
            **DISTRICT JUDGE**